Williams, J.
It is not contended here that there is any ground upon which Chase can be held liable for the money deposited by the plaintiff on the 2d day of June, 1893. The errors for which the judgment of the trial court was reversed concern his liability upon the first and second causes of action, for the money deposited while he was a partner in the bank. It appears from the record, that the banking copartnership between Beatty *523 and Chase was formed in 1888, and continued until September 1,1892, when it was dissolved by agreement, under which Beatty took its assets and assumed the payment of its liabilities. Beatty thereafter continued the business, in the name of the Cardington Bank, until August 16, 1893, when he failed. The plaintiff left on deposit with the firm, on the 12th day of February, 1890, the sum of one thousand dollars, and on the 12th day of August, 1890, the further sum of four hundred and seventy-five dollars. And upon these two deposits his first and second causes of action are founded. For each of these sums, the firm issued to the plaintiff, at the time the money was left with it, a certificate of deposit payable six months thereafter with a special rate of interest for that period only. These certificates were surrendered by the plaintiff at maturity, when the interest was paid, and new ones issued to him in like form for another period of six months; and, thereafter renewals were made in the same way every six months so long as the firm continued to exist. Each of the certificates bore the names “R. F. Chase, President,” and “fm. G. Beatty, Cashier,” printed at the top, and was signed “F. A. Bayer, a cashier.” On the 27th day of October, 1892, being in the month following the dissolution of the firm, the plaintiff made a new deposit in the bank, of one hundred and twenty-five dollars, and then received a certificate of deposit for the amount, in the same form as those which had been previously issued by the firm, except that the name of Chase, President, was erased by lines of red ink drawn over it. After that, on the 12th day of February, 1893, the plaintiff surrendered to the bank the last renewal certificates issued to him for the one thousand dollars *524 and the four hundred and seventy-five dollars while Chase was connected with the bank, received the interest then due on them, and accepted new certificates for corresponding amounts payable six months from that time, and bearing a like rate of interest until their maturity. The name of Chase did not appear on these last certificates, as President, or otherwise. The evidence tended to prove that when the plaintiff accepted them he knew that Chase had withdrawn from the firm, that Beatty had assumed payment of its liabilities, and was then the sole owner of the bank, and, that the plaintiff had made inquiries concerning Beatty’s solvency and responsibility.
The court in its general charge instructed the jury, in substance, that the agreement made between the defendants on the dissolution of the firm would not affect Chase’s liability to the plaintiff, unless the latter consented to the arrangement, or acquiesced in it; but if, with knowledge of the agreement, he surrendered the certificates issued to him while Chase was a member of the firm, and received in place of them certificates issued by Beatty, with Chase’s name omitted therefrom, calling for the same or a greater rate of interest for a specified time, that would release Chase. The instruction requested, which the court declined to give, was, in effect, that Chase would not be released from liability unless the plaintiff agreed to accept the new certificates in payment of the indebtedness of the firm, or intended, in accepting them, to take Beatty for the debt and release Chase.
The instruction requested is in accordance with the rule established in this state. In Merrick v. Boury, 4 Ohio St., 60, it is held that a note given for a precedent debt of the maker will not be *525 regarded as a payment of the debt unless the creditor agreed to so receive it. And in Leach v. Church, 15 Ohio St., 169, the same rule was applied in a case where, after the dissolution of a partnership, a note was given for a debt of the firm by one of the partners who had agreed to pay its liabilities. It is a question of fact for the jury to determine, in such cases, whether the creditor agreed or intended to receive the note or other obligation of the partner, in payment. In the cases cited it is said, that the agreement or intention to so receive it must be clearly shown; but that, we apprehend, is a consideration addressed to the judgment of the jury, rather than a rule of evidence. The agreement or intention need not be express, but may be implied from the circumstances of the transaction and conduct of the parties. And no higher degree or greater certainty of proof is necessary to establish the agreement than is ordinarily required to prove any other fact in civil cases. A preponderance of the evidence is sufficient. The new certificates of deposit issued to the plaintiff after the dissolution of the . banking firm, were the individual obligations of Beatty. They imposed no liability on Chase. And their substitution for the old ones then surrendered, in satisfaction of the firm debt and discharge of Chase from liability', being in accordance with the agreement of dissolution, Beatty’s intention to thus pay the firm debt with his individual obligation would be sufficiently obvious; and the plaintiff’s intention to so receive them might be inferred from the fact that he surrendered the firm certificates, and accepted, and has since retained, the new ones, knowing them to be the individual obligations of Beatty, who was bound by his agreement with Chase to *526 pay the firm debts. The plaintiff might reasonably understand that, in the transaction, Beatty was acting in pursuance of his agreement to pay the debts of the firm, and be willing to rely on his individual responsibility in order to secure the continuance of the money at interest for a definite future period. These facts, however, are evidential merely; and it was the province of the jury, and not of the court, to draw the proper inferences, and from them, in connection with all the evidence in the case, determine whether there was an agreement or intention to accept the certificates in payment of the firm debt.
But, while the court failed in its general charge to properly submit this question to the jury, it was so submitted upon the written requests of the plaintiff for special findings. In pertinent and sufficiently certain responses to these requests the jury found and returned, in addition to the general verdict, that when the plaintiff received the certificates of deposit issued to him after the dissolution of the banking firm, he had knowledge of its dissolution, and of the ag’reement between the partners by which Beatty was to pay the indebtedness of the firm, and, that he then consented to release Chase, and take Beatty alone for the payment of his debt against the firm, and intended to do so. The special findings are consistent with the general verdict, and cured the error in the general charge of the court, and in its refusal of the instruction requested. They find the essential facts which fix the legal rights of the parties, and cover the questions that the plaintiff desired to have submitted to the jury by the instructions which were refused. Nor, can the findings be re *527 garded as any the less impartial or decisive than if the jury had been instructed concerning the effect they should have on the general verdict. A new trial, with those instructions, could only result in a resubmission of the same questions of fact to another jury. And though that jury might find differently, it could only do so because it might take a different view of the weight of the evidence. There being nothing in the record to show that the findings already made are erroneous, the plaintiff in error is entitled to the judgment which he recovered in the trial court.
Judgment of the circuit court reversed, and that of the common fleas affirmed.